⎮EBENEZER KERR *against* GEORGE STIFFEY *et als.*

K. obtained a judgment against I. which bound his equitable title to a tract of land purchased from, and held by articles of agreement with G. G. subsequently obtained a judgment against I., in an action of covenant to recover a balance of the purchase money, upon which the land was levied and sold by the sheriff to G., to whose judgment the purchase money was applied by a judgment of the Court, in a feigned issue between K. and G. to try the right thereto. K. afterwards issued an execution upon his judgment and levied and sold the same land; he became the purchaser, and brought an ejectment against G. to recover the land, after having tendered to him the balance of the purchase-money due by I. on the articles. *Held:* That K. was not entitled to recover.

ERROR to the Common Pleas of Westmoreland county.

This was an action of ejectment for 142 acres of land, in which the plaintiff in error was the plaintiff below.

A special verdict was agreed upon between the parties. The following facts, therein contained, are alone material.

On the 4th May, 1820, *Ebenezer Kerr,* the plaintiff, obtained a judgment against *Joseph Irvine* for $796, which was regularly revived until February Term, 1826, to which a *fi. fa.* issued on the said judgment, which was levied on the land in dispute. To May Term, 1826, a *vend. expos.* issued, upon which the land was sold to *Ebenezer Kerr* for $710, to whom a deed was made by the sheriff.

*John Gallaher,* who was the landlord of the defendants, was the owner of the land; he, on the 17th July, 1816, entered into articles of agreement with *Joseph Irvine,* for the sale of the land to him, upon the following terms:—purchase-money, $2200, $300 of which was to be paid in hand, on the execution of the article: $700 on the 1st May, 1817; and the residue in annual payments of $200 each. The hand money, the amount payable 1st May, 1817, and the first annual payment of $200, due 1st May, 1818, were paid by *Irvine.* In 1820, two annual payments being due upon the article, *Gallaher* brought an action of covenant thereon against *Irvine,* and on the 8th October, 1821, obtained a judgment for $477 50, being the balance due on the contract, at the

time suit was brought.   A *fi. fa.* was issued on this judgment, to November Term, 1821, which was levied on the land in dispute. A *vend. expos.* issued to February Term, 1822, upon which the land was sold to *John Gallaher* for $705, who on the 19th February, 1822, obtained the sheriff's deed therefor.

A dispute arose between *Gallaher* and *Ebenezer Kerr,* concerning the appropriation of the purchase-money arising from this sale: a case was stated for the opinion of the Court, in which judgment was rendered in favor of *Gallaher.*   A writ of error was taken out by *Kerr,* and the judgment was affirmed by the Supreme Court.*

Before this ejectment was brought, *Kerr* tendered to *Gallaher* the balance of the purchase-money due upon the articles of agreement, which he was willing to pay, upon judgment being rendered in his favor.

The Court *(Young,* president) entered a judgment for the defendants.

*A. W. Foster* for plaintiff in error.

*Kerr* having the first lien against the estate of *Irvine,* was entitled to the proceeds of the sale upon the judgment of *Gallaher,* just as if a stranger, and not *Gallaher,* had become the purchaser. *Gallaher,* therefore, having paid no money of his own, but it being money which rightly belonged to *Kerr,* which was the consideration of the sheriff's deed to *Gallaher,* he thereby became a trustee, and held for *Kerr.*   And *Kerr's* offer to pay the balance of the purchase-money, due on the article of agreement, divested *Gallaher* of all equity, and gave to him the legal right to recover the possession.

*J. B. Alexander* for defendant in error.

At the first sheriff's sale *Gallaher* purchased the equitable title of *Irvine,* by which he became vested with the equitable estate of the vendee, and by operation of law the contract was thereby fully executed.   After this sale, nothing was left in *Irvine,* that could be levied and sold on *Kerr's* judgment.   *Kerr* was, perhaps, entitled to the proceeds of that sale, to be applied to his judgment; but that cannot now be inquired into, as there is a final judgment on the subject.   *Gurney* v. *Alexander,* 14 *Serg. & Rawle,* 257. *Gilmore* v. *Commonwealth,* 17 *Serg. & Rawle,* 277.

The equity of *Irvine* is vested in *Gallaher,* and the money disposed of.   This ends all idea of trust, and settles the controversy. *McGrew* v. *McLanahan,* 1 *Penn. Rep.* 44.

---

* *Note.*—The judgment was not affirmed by the Supreme Court. The facts were so imperfectly stated, and the case so irregularly brought up, that the Court decided that it was not the subject of a writ of error.—*See* 8 *Serg. & Rawle,* 528.

(Ebenezer Kerr *v.* George Stiffey.)

The opinion of the Court was delivered by

Huston, J.—*John Gallaher* owned the land in question; and contracted to sell the same to *Joseph Irvine,* who paid more than half the purchase-money. 4th of May, 1820, *Ebenezer Kerr* obtained a judgment against *Joseph Irvine,* which bound *Irvine's* equitable interest in this land. The legal title was in *Gallaher,* and a right to the residue of the purchase money, before he could be compelled to part with it. *John Gallaher* brought suit to recover some instalments due, and in October, 1821, recovered judgment: he took out a *fi. fa.* to November, 1821, and it was levied on the land in question. A *ven. expos.* was issued to February, 1822, and the land was sold, and purchased by *John Gallaher.* If the land has been sold on *Kerr's* judgment, and bought by *Kerr* or any stranger, the purchaser would have bought only *Irvine's* equitable interest, and must have paid the balance due to *Gallaher,* in order to obtain the title. When a vendor on articles sells the land of the vendee for a balance of purchase-money, perhaps the purchaser would take both the legal and equitable title; for he who has the legal title having elected to proceed by judgment and execution and to sell and, could not, perhaps, afterwards say, there was remaining in himself an interest not sold. But as that case is not before us, I give no opinion, about it; for here *Gallaher,* the vendor, became the purchaser. *Irvine* had an equitable interest: that was sold: the legal title and remaining equitable interest, was then in *Gallaher;* and when he purchased all the interest which *Irvine* had, the whole estate, legal and equitable, became united in *Gallaher,* and there was no interest remaining in *Irvine.*

Clearly, *Kerr* was entitled to the money arising from the first sale, and claimed it: but he lost it by not pursuing the right mode to obtain it. But we cannot do wrong, and unsettle decisions and fixed principles on that account. To put it on the most favorable footing for *Kerr, Irvine* had only an equitable right, that could be levied on and sold, and the purchaser would stand in *Irvine's* place, and must pay the residue of the purchase-money into Court. When he had done this, and got his deed, he had nothing to do with the application of the money. If the money was misapplied, or lost in the sheriff's hands, it did not affect the right of the purchaser. If a stranger had purchased, and the money had gone to *Gallaher,* so much the better for him; it would have extinguished the legal title: if it had gone to *Kerr,* the legal title might have been out against him; but still he had *Irvine's* interest and *all Irvine's* interest. *Irvine* had neither legal nor equitable title left in him; there was no right or title on which to levy the second execution: nothing to sell, and the purchaser got nothing, and can recover nothing.

　　　　　　　　　　　　　　Judgment affirmed.